COMMERCIAL TRIBUNE BLDG. CO. v. POTTHOFF & FREY IRON CO.

CONSTRUCTION OF CONTRACT—USAGE IN STEEL STRUCTURAL BUSINESS AS TO WEIGHT OF MATERIALS.

Where an iron company contracts with a building company to erect a structural steel building at a price per ton, and it is admitted that the "ton" refers to the ton commonly employed in this business, and that the weight of materials is customarily computed from measurement of dimensions and by reference to tables, and not by actual weight, it is proper to show, in an action on the contract for the agreed price, that the weight of steel, by general custom in this business, referred to the gross weight as per measurement, and not to the net weight of steel actually employed in the structure after the necessary boring for rivets and the necessary trimming and shaping for fitting the parts together had been completed.

[Syllabus approved by the court.]

**Mallon & Vordenberg,** for plaintiff in error.

**Fred Hertenstein** and **Roettinger & Gorman,** for defendant in error.

Hamilton County.

**SWING, J.**

The Potthoff & Frey Iron Company brought an action in the court of common pleas against the Commercial Tribune Building Company for the balance due on a contract for the erection of a certain steel or iron building in the city of Cincinnati. Judgment was rendered in that court for the plaintiff. The Commercial Tribune Building Company brings this action into this court on error to reverse said judgment.

The rights of the parties depend mainly on what construction the court gives to the contract in controversy. The contract in question had its inception in the following proposal:

"Cincinnati, Ohio, July 2, 1901.

"The Commercial Tribune Building Company, City.

"Gentlemen:—We propose to furnish and erect the iron work for your proposed new building, to be erected on the north side of Government Place, between Main & Walnut streets, this city, as per specifications and classifications as prepared by Bert. Baldwin & Co., at the price per ton named on the bid form.

"Hoping to be awarded this contract, we are, yours respectfully,
                    "THE POTTHOFF & FREY IRON CO.,
                        "per W. F. POTTHOFF, President."

The said company replied to this as follows:

"Cincinnati, Ohio, July 3, 1901.

"The Potthoff & Frey Iron Co., City.

"Gentlemen:—The undersigned has decided to award to your company the contract for the steel structure for the Commercial Tribune Building, and direct you to prepare the necessary strain diagrams; make modifications in the design and construction that will be acceptable to, and approved by, your engineer; after which you are to make a carefully itemized estimate as to the weight of different class of materials required in the structure and figure out a 'lump bid' based upon the prices per pound according to your proposition of July 2, 1901, which estimate will be checked over and approved by the company's engineer before the final contract is prepared and signed.

                    THE COMMERCIAL TRIBUNE BUILDING CO.,
                        "per JOSEPH C. BUTLER, Mngr."

These are all the matters pertaining to this contract that need be set out here in order to determine the questions arising on this record.

The principal question in dispute depends on how the weight of

Building Co. v. Iron Co.

the iron shall be computed. It is contended by defendant in error that the gross weight of the iron as determined by the tables used in the iron and steel business shall govern without any deductions for holes punched out for rivets and cuttings made to adjust the different parts. On the contrary, the plaintiff in error contends that under this contract it is only bound to pay the net weight of the iron after it is placed in the building, and that the terms of the contract are explicit upon this point.

The plaintiff below, over the objection of the defendant, was permitted to introduce evidence tending to prove that ever since steel structural buildings have been erected in this country, the usage among all persons engaged in this business is to compute the weight of the steel not by actual weight, but by measurements according to the "Carnegie Tables" as it comes from the mill, and that no deduction is made for the holes punched out and the cuttings made in shaping the steel to fit the different parts. The plaintiff in error claims that this was partially erroneous. It does not claim that the usage as to computing by measurement by the tables instead of actual weight was not correct, but only that deduction should be allowed for the steel punched out when the holes are made, and when pieces are cut off in the adjustment of the parts.

The object in the construction of all written instruments is to arrive at the intention of the parties, and when this is ascertained, the court must give it effect, unless restrained by law. The difficulty generally arises in knowing what effect to give to the language used. In arriving at this knowledge, the court may always take into consideration the circumstances surrounding the parties at the time. This is necessary to understand in what sense the parties used the words contained in the instrument; for this reason usage or custom, where it is shown to exist in any particular business or trade, is permitted to be given in evidence.

There is a great mass of law to be found in the text-books and adjudicated cases relating to this question, but I deem it necessary to cite only one authority which it seems to me states the principle very clearly. It is found in the opinion by Lord Campbell in the case of *Humfrey* v. *Dale*, 7 Ell. & Bl. 274. In speaking of the question then before the court, he says:

"Whether this evidence be treated as explaining the language used, or adding a tacitly implied incident to the contract beyond those which are expressed, is not material. In either point of view, it will be admissible unless it labors under the objection of introducing something

repugnant to, or inconsistent with, the tenor of the written instrument. And, upon consideration of the sense in which that objection must be understood with reference to this question, we think it does not.

"In a certain sense every material incident which is added to a written contract varies it, makes it different from what it appeared to be, and so far is inconsistent with it. If, by the side of the written contract without, you write the same contract with the added incident, the two would seem to import different obligations. To take a familiar instance by way of illustration: on the face of a bill of exchange at three months after date the acceptor would be taken to bind himself to the payment precisely at the end of the three months; but, by the custom, he is only bound to do so at the end of the days of grace, which vary, according to the country in which the bill is made payable, from three up to fifteen. The truth is, that the principle on which the evidence is admissible is, that the parties have not set down on paper the whole of their contract in all its terms, but those only which were necessary to be determined in the particular case by specific agreement, and which of course might vary infinitely, leaving to implication and tacit understanding all those general and unvarying incidents which a uniform usage would annex, and according to which they must in reason be understood to contract, unless they expressly exclude them. To fall within the exception, therefore, of repugnancy, the incident must be such as, if expressed in the written contract, would make it insensible or inconsistent."

The use of the word "ton" in this contract is certainly indefinite. Its primary meaning is no doubt weight in pounds, but the word "ton" varies according to the business in which it is used—it is not alone fixed and definite. There are three different kinds of tons; long ton, 2240 lbs.; a short ton, 2000 lbs.; and metric ton, 2204.06 lbs. Which of these does the word "ton" mean in this instrument? The instrument should not be held void for uncertainty, for it is easily made certain by ascertaining the meaning of the word according to the usage in the steel structural business. Then again, as said, *supra,* the primary meaning probably would imply that the steel or iron was to be weighed. How can weight be ascertained except by weighing? And yet both sides agree that in ascertaining whatever is the proper weight to be ascertained in this case, the iron is not to be actually weighed, but is to be found from measurements and tables, and this, too, is by reference to the usage prevailing in the iron or steel structural business. If it is permissible in order to show how many pounds compose a "ton," and to show that the iron is never weighed but estimated by tables and

measurements according to the usage in the iron business, we see no objection to showing by usage in the same business whether a deduction is made for the holes punched out and the parts chipped off. The evidence clearly established the existence of the usage, and that it is reasonable there can be no question. Furthermore, if any doubt existed as to the understanding of the parties, great weight is properly attached to the construction of the contract given to it by both parties during the construction of the building. There were no less than twelve preliminary estimates made by the defendant company by its engineer, upon which large payments were made, and all of them in accord with the contention of the plaintiff, and the thirteenth and final estimate was made by the company's engineer on the same basis of calculation. The company, however, refused payment on this, and under its direction another estimate was made on the basis of calculation made by it.

We see no error in the charge of the court. The question of usage was properly stated by the court in our judgment, and the contention made by the plaintiff in error was not correct as to the character of proof necessary to establish usage.

Judgment affirmed.

**Jelke** and **Giffen, JJ.,** concur.